UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

STEPHEN BUSHANSKY,

                 Plaintiff,

        v.

U.S. XPRESS ENTERPRISES, INC., ERIC
FULLER, MAX FULLER, JON BEIZER,
EDARD BRAMAN, JENNIFER G.
BUCKNER, MICHAEL DUCKER, DENNIS
NASH, and JOHN C. RICKEL,

                 Defendants.

------------------------------------------------------------

Case No. _____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

      Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his

complaint against defendants, alleges upon personal knowledge with respect to himself, and upon

information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations

herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

      1.     This action is brought by Plaintiff against U.S. Xpress Enterprises, Inc. ("USX" or

the "Company") and the members of USX's Board of Directors (the "Board" or the "Individual

Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of

1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange

Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed

transaction, pursuant to which USX will be acquired by Knight-Swift Transportation Holdings Inc.

("KNX") through KNX's subsidiary Liberty Merger Sub Inc. ("Merger Sub") (the "Proposed

Transaction").

2.      On March 21, 2023, USX and KNX issued a joint press release announcing their entry into an Agreement and Plan of Merger (the "Merger Agreement") to sell USX to KNX. Under the terms of the Merger Agreement, each holder of USX common stock will receive $6.15 in cash for each share of USX common stock (the "Merger Consideration").  The Proposed Transaction is valued at approximately $808 million.

3.      On May 24, 2023, USX filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that USX stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) USX management's financial projections, relied upon by the special committee of the Boards's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan") for its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan; and (iii) the background of the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as USX stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.      In short, unless remedied, USX's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, USX's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of USX.

9.      Defendant USX is a Nevada corporation, with its principal executive offices located at 4080 Jenkins Road, Chattanooga, Tennessee 37421.  The Company operates as an asset-based truckload carrier primarily in the United States.  USX's common stock trades on the New York Stock Exchange under the ticker symbol "USX."

10.     Defendant Eric Fuller ("Eric Fuller") is President and Chief Executive Officer ("CEO") of the Company, and has been a director since 2014.

11.     Defendant Max Fuller ("Max Fuller") is cofounder and Executive Chairman of the Company, and has been a director since 1989.

12.     Defendant Jon Beizer ("Beizer") has been a director of the Company since 2018.

13.     Defendant Edward Braman ("Braman") has been a director of the Company since 2018.

14.     Defendant Jennifer G. Buckner ("Buckner") has been a director of the Company since 2020.

15.     Defendant Michael Ducker ("Ducker") has been a director of the Company since 2020.

16.     Defendant Dennis Nash ("Nash") has been a director of the Company since 2018.

17.     Defendant John C. Rickel ("Rickel") is Lead Independent Director and has been a director of the Company since 2018.

18.     Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     KNX is one of North America's largest and most diversified freight transportation companies, providing multiple truckload transportation, less-than-truckload, logistics, and business services to the shipping and transportation sectors.  KNX uses a nationwide network of business units and terminals in the United States and Mexico to serve customers throughout North America.  In addition to operating the country's largest tractor fleet, KNX also contracts with third-party equipment providers to provide a broad range of services to its customers while creating quality driving jobs for driving associates and successful business opportunities for independent contractors.

20.     Merger Sub is a Nevada corporation and an indirect wholly-owned subsidiary of KNX.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.     USX is an asset-based truckload carrier, providing services throughout the United States with a focus in the densely populated and economically diverse eastern half of the United States.  The Company offers customers a broad portfolio of services using its own truckload fleet and third-party carriers through its asset-light freight brokerage network.  The Company's fleet consists of approximately 7,200 tractors and approximately 14,400 trailers, including approximately 1,000 tractors provided by independent contractors.

22.     On February 9, 2023, USX announced its fourth quarter and full year 2022 financial results and business development highlights.  Operating revenue was $542.5 million in the fourth quarter of 2022, an increase of 2.0%, compared to the fourth quarter of 2021.  Operating revenue for the full year 2022 was $1.9 million, up from $1.79 million in 2021.  Reflecting on the Company's results, defendant Eric Fuller stated:

> For the full year, we generated record operating revenue, identified significant fixed costs that we are taking out of the business, and realigned our Truckload segment to improve operating profitability going forward.  In the fourth quarter, sequential rate pressure from our spot market exposure and higher fuel costs more than offset the positive contributions from our Dedicated and Brokerage businesses as well as the progress made from our Realignment Plan.  In 2023, we will continue to focus on execution, servicing our customers at a high level and reducing our spot market exposure.  We believe the benefits from these initiatives combined with our lower fixed cost structure will become apparent as the market turns.

**The Proposed Transaction**

23.     On March 21, 2023, USX and KNX issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

PHOENIX & CHATTANOOGA, Tenn.--(BUSINESS WIRE)-- Knight-Swift Transportation Holdings Inc. (NYSE: KNX) ("Knight-Swift") and U.S. Xpress Enterprises, Inc. (NYSE: USX) ("U.S. Xpress") today announced an agreement under which Knight-Swift will acquire U.S. Xpress for a total enterprise value of approximately $808 million, excluding transaction costs.  The transaction has been unanimously approved by the Board of Directors of Knight-Swift and a Special Committee of the independent directors of the U.S. Xpress Board of Directors ("Special Committee").  It is expected to close late in the second quarter or early third quarter of 2023, subject to customary closing conditions.

**Highlights**

- *Knight-Swift revenue base to grow by nearly 30%; Knight-Swift management targets high-80s adjusted operating ratio[1] and mid-teens return on invested capital[1] for U.S. Xpress by calendar 2026*
- *U.S. Xpress stockholders to receive 310% premium over U.S. Xpress' closing stock price on March 20, 2023; U.S. Xpress Special Committee determined compelling cash consideration maximizes value for U.S. Xpress stockholders*
- *U.S. Xpress brand and separate operations to continue*
- *Knight-Swift growth and diversification strategy remains intact, with low leverage and strong cash flows to support ongoing national LTL build-out and full range of capital allocation alternatives*

Knight-Swift CEO, Dave Jackson, commented, "The opportunity to add one of the largest and most well-known brands in our industry, with significant opportunity to improve earnings, gain customers and reach more professional drivers, was very compelling to us.  We expect to apply the same playbook that proved successful in the Knight-Swift merger as we share best practices, improve operations and work together to help U.S. Xpress become the best that it can be.  Although it will take time, particularly given the current freight environment, we would not have pursued the transaction unless we were confident in achieving our return thresholds within a few years.  Beyond that, we will continue to work with the U.S Xpress team in pursuit of the performance levels of our other truckload businesses over the next several years, so the opportunity for our stockholders is substantial.  Moreover, this transaction will not slow down the geographic expansion of our LTL network or our other growth initiatives, as our financial and other resources remain significant."

U.S. Xpress CEO, Eric Fuller, said: "We are very pleased to deliver to our stockholders the opportunity for near-term liquidity at a significant premium.  Additionally, joining the Knight-Swift team is an exciting opportunity for our people, our customers, and the Chattanooga and other communities we call home.  The increased scale, operating expertise and resources of the combined entity will allow U.S. Xpress to pursue new levels of service and efficiency.  We're delighted that U.S. Xpress will continue to operate as an independent brand and will do so

with the support and partnership of one of North America's strongest transportation companies."

John Rickel, Lead Independent Director and Chair of the U.S. Xpress Special Committee, said: "The Special Committee evaluated the transaction against the company's standalone prospects and current macroeconomic environment and unanimously determined that the compelling and certain cash consideration is in the best interest of all U.S. Xpress stakeholders and maximizes value for its stockholders.  Knight-Swift is a proven operator with a strong track record in the industry, and we are confident this transaction is the best path forward for U.S. Xpress."

### **Strategic Rationale and Financial Goals**

A slide presentation containing additional information about the transaction and goals has been posted to Knight-Swift's investor relations site at investor.knight-swift.com.

Based on 2022 results, U.S. Xpress is expected to add approximately $2.2 billion in total operating revenue (including $1.8 billion in truckload revenue), 7,200 tractors, and 14,400 trailers to Knight-Swift's consolidated enterprise.  After the transaction, Knight-Swift's consolidated revenue run-rate is expected to approach $10 billion, while the truckload fleet will have approximately 25,000 tractors and 93,000 trailers.

For 2022, U.S. Xpress total revenue comprised approximately 36% dedicated truckload, 34% U.S. Xpress Inc. irregular route truckload, 14% Total Transportation of Mississippi irregular route truckload, and 16% brokerage. Portions of the U.S. Xpress business are performing reasonably well, such as the Total Transportation subsidiary, while the most underperforming irregular route business unit matches up well with Knight-Swift's strengths.

The transaction is expected to be accretive to Knight-Swift's adjusted earnings per share[1] starting in 2024. Knight-Swift is targeting a high-80s adjusted operating ratio[1] by calendar 2026, producing a mid-teens return on invested capital[1] for the consolidated U.S. Xpress business unit.  Further, management expects the U.S. Xpress truckload business to perform similarly to Knight-Swift's other truckload business units over time based on Knight-Swift's historical execution and success with acquisitions.

Knight-Swift operates one of the largest asset-based truckload fleets in North America while delivering leading profitability.  The truckload business generates most of the capital Knight-Swift deploys for growth, diversification, and returning capital to shareholders, such as the $1.5 billion invested in acquisitions in the less-than-truckload sector and $733 million spent on share buybacks and dividends over the past three years.  For perspective, in 2013, the year before the acquisition of

Barr-Nunn, Knight Transportation's truckload segment generated $822 million in revenue and $106 million in GAAP operating income (12.9% operating margin). By 2022, through internal growth and several acquisitions, Knight-Swift's consolidated truckload segment generated $4.5 billion in revenue and $747 million in GAAP operating income (16.5% operating margin).

**Transaction Terms**

In the transaction, U.S. Xpress stockholders will receive $6.15 per share in cash for each outstanding share of U.S. Xpress Class A and Class B common stock, except Max Fuller, Executive Chairman of U.S. Xpress, and Eric Fuller and related entities (collectively, the "Fullers") will rollover a portion of their shares of U.S. Xpress into an approximately 10% interest in a new Knight-Swift subsidiary formed to hold the U.S. Xpress business post-closing. The rollover interests will be subject to optional and mandatory redemption provisions based on the future performance of the U.S. Xpress business post-closing. As minority owners in the future U.S. Xpress, the Fullers will have a continuing economic interest and be fully aligned with Knight-Swift in ensuring that U.S. Xpress is best positioned for success, including by fostering ongoing relationships with key customers and vendors, and maintaining other important business relationships. Additionally, the Fullers have agreed to certain restrictive covenants.

The total enterprise value of $808 million for U.S. Xpress represents Knight-Swift assuming U.S. Xpress' $484 million of outstanding debt and finance leases and purchasing its outstanding equity for $324 million, or $6.15 per share, and excludes its $336 million of operating lease liabilities for the purposes of this calculation (debt and lease balances as of December 31, 2022). As of December 31, 2022, U.S. Xpress had approximately $96 million in outstanding borrowings under its secured revolving credit facility and $388 million in other long-term debt and finance leases. Knight-Swift expects to repay and terminate the U.S. Xpress secured revolving credit facility at closing while seeking to retain in place U.S. Xpress' existing primarily fixed-rate equipment and real estate financing arrangements. Knight-Swift had approximately $1.3 billion unrestricted cash and available liquidity on December 31, 2022, a portion of which will fund the transaction.

**Transition Plan**

After the closing of the transaction, U.S. Xpress will continue as a separate brand and operation to minimize disruptions for the driving associates, shop and office employees, and customers. At the same time, cross-functional teams made up of leaders from Knight, Swift, and U.S. Xpress will work together to leverage economies of scale, freight network efficiencies, and best practices.

Through closing, U.S. Xpress will continue to be led by its current senior management. At closing, the Fullers along with Eric Peterson, CFO, will transition out of their executive officer roles while remaining available to ensure a smooth

transition.  Tim Harrington and Josh Smith, both executives at Swift and members of the teams that helped achieve significant margin improvement following the Knight-Swift merger, will join U.S. Xpress as President and CFO, respectively. Tim and Josh will be supported by Knight-Swift's deep bench of subject matter experts, and their prior transition experience is expected to make them excellent partners for working with the U.S. Xpress team.

Mr. Jackson commented: "The Fuller family, along with their co-founders, the Quinns, built one of the largest and fastest growing truckload carriers in the country, which is a significant accomplishment in such a fiercely competitive industry. We're honored to lead the next phase of U.S. Xpress' development, and we are pleased that the Fullers are willing to link a portion of their economic outcome to ours to mitigate the transition risk and will be aligned with us in ensuring that U.S. Xpress becomes the best it can be."

## Approvals and Expected Timing

The transaction is not conditioned on financing and is subject to regulatory and other customary conditions, including approval of holders of a majority of the voting power of the outstanding shares of U.S. Xpress Class A and Class B Common Stock voting together, approval of holders of a majority of the outstanding shares of each class of U.S. Xpress common stock, voting separately, and approval of holders of a majority of all outstanding U.S. Xpress' shares not held by the Fullers, the officers and directors of U.S. Xpress, or Knight-Swift (a "majority-of-the minority approval").

The Fullers, which together hold approximately 29% of the outstanding shares of U.S. Xpress common stock representing approximately 58% of the U.S. Xpress voting power, have delivered to the members of the U.S. Xpress Special Committee an irrevocable proxy to vote their shares in favor of the transaction.  Upon completion of the transaction, which is expected late in the second quarter or early third quarter of 2023, U.S. Xpress will de-list from the New York Stock Exchange.

## Advisors

Scudder Law Firm, P.C., L.L.O. of Lincoln, Nebraska served as Knight-Swift's transaction and legal advisor, and Fried, Frank, Harris, Shriver & Jacobson LLP served as its legal advisor in connection with the transaction.  J.P. Morgan Securities LLC served as exclusive financial advisor to the Special Committee of independent directors of the U.S. Xpress board of directors, and King & Spalding LLP served as its legal advisor.  Holland & Hart LLP served as legal advisor to the Fuller family.

**Insiders' Interests in the Proposed Transaction**

24.     USX insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of USX.

25.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with KNX.  Under the terms of the Merger Agreement, all Company options, restricted shares, restricted stock units ("RSUs"), and performance-based restricted stock units ("PSUs") will vest and convert into the right to receive cash payments upon closing of the merger, as set forth in the following table:

| Name | Company Restricted Shares (#) | Company RSUs (#) | Company PSUs (#) | Company Options (#) | Estimated Value ($)[1] |
|---|---|---|---|---|---|
| **Executive Officers** | | | | | |
| William E. Fuller | — | — | — | — | — |
| Eric Peterson | 143,479 | 33,359 | 76,681 | 63,727 | 1,559,142 |
| Max L. Fuller | — | — | — | — | — |
| Joel Gard | — | — | — | — | — |
| Jason Grear | 47,144 | — | 25,346 | — | 445,814 |
| Justin Harness | 115,405 | — | 54,713 | — | 1,046,226 |
| Nathan Harwell | 92,098 | — | 43,353 | — | 883,024 |
| Bryan Johnson | — | — | — | — | — |
| Jacob Lawson | — | — | — | — | — |
| Amanda Thompson | 85,366 | — | 39,322 | — | 766,831 |
| **Non-Employee Directors**[2] | | | | | |
| Jon Beizer | — | — | — | — | — |
| Edward "Ned" Braman | — | — | — | — | — |
| Jennifer Buckner | — | — | — | — | — |
| Michael Ducker | — | — | — | — | — |
| Dennis Nash | — | — | — | — | — |
| John Rickel | — | 5,263 | — | — | 32,367 |

26.     Moreover, if they are terminated in connection with the Proposed Transaction, the Company's executive officers who are not named executive officers will receive substantial cash

severance payments.  The estimated aggregate value of the severance benefits that would be payable to the Company's four executive officers who are not named executive officers under their executive employment agreements is $1,341,456.

27.     Further, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers will receive substantial cash severance payments, as set forth in the following table:

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Tax Reimbursement ($)[4] | Total ($)[5] |
|---|---|---|---|---|---|
| William E. Fuller | — | — | — | — | — |
| Eric Peterson | 2,388,750 | 1,559,142 | 66,177 | 133,107 | 4,417,176 |

## The Proxy Statement Contains Material Misstatements and Omissions

28.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) USX management's financial projections, relied upon by the special committee of the Boards's financial advisor J.P. Morgan for its financial analyses; (ii) the inputs and assumptions underlying the financial analyses performed by J.P. Morgan; and (iii) the background of the Proposed Transaction.  Accordingly, USX stockholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning USX Management's Financial Projections*

29.     The Proxy Statement fails to disclose material information concerning USX management's financial projections.

30.     For example, the projections for fiscal years 2028-2029 set forth in the February Management Projections reflect extrapolations prepared by USX management and approved by USX management for use by J.P. Morgan in its financial analyses.  The Proxy Statement fails,

however, to disclose the assumptions underlying the extrapolation made to the February Management Projections.

31.     Additionally, with respect to each of the Case 1, Case 2, and Case 3 December Management Projections and the February Management Projections, the Proxy Statement fails to disclose the line items underlying (a) EBITDA and (b) Unlevered free Cash Flow.

32.     The omission of this information renders the statements in the "Management Projections" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act

***Material Omissions Concerning J.P. Morgan's Financial Analyses***

33.     The Proxy Statement also describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, USX's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to USX's stockholders.

34.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 8.00% to 10.00%; and (ii) the implied perpetuity growth rates resulting from the analysis.

35.     The omission of this information renders the statements in the "Opinion of U.S. Xpress' Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

36.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

37.     For example, the Proxy Statement references drafts of a term sheet regarding a potential equity rollover that was exchanged between the parties in December 2022.  The Proxy Statement fails, however, to disclose the specific terms of the draft term sheets regarding a rollover of Max L. Fuller's, FSBSPE 1, LLC's, FSBSPE 2, LLC's, FSBSPE 3, LLC's, Fuller Family Enterprises, LLC's, William E. Fuller's, Max L. Fuller 2008 Irrevocable Trust FBO William E. Fuller's, and Max Fuller Family Limited Partnership's USX stock.

38.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

39.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of USX will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

40.     Plaintiff repeats all previous allegations as if set forth in full.

41.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about (i) USX management's financial projections, relied upon by J.P. Morgan for its financial analyses; (ii) the inputs and assumptions underlying J.P. Morgan's financial analyses; and (iii) the Background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

44.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

46.     Plaintiff repeats all previous allegations as if set forth in full.

47.     The Individual Defendants acted as controlling persons of USX within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers and/or directors of USX, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Proxy Statement.

50.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, USX stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of USX, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to USX stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for
Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.


Dated:  May 25, 2023                              **WEISS LAW**


                                        By   *Michael Rogovin*
                                             Michael Rogovin
                                             476 Hardendorf Ave. NE
                                             Atlanta, GA 30307
                                             Tel: (212) 682-3025
                                             Fax: (212) 682-3010
                                             Email: mrogovin@weisslawllp.com

                                             *Attorneys for Plaintiff*